**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF INDIANA**

05 JUN 30 PM 1: 17

LAURA A. BRIGGS
CLERK

| | |
|---|---|
| Boyle Construction Management, Inc. ) | |
| ) | |
| Plaintiff, ) | |
| ) | CASE NO. 1:05-cv-0979-SEB-VSS |
| v. ) | |
| ) | |
| Irving Materials, Inc. and Unnamed ) | |
| Co-Conspirators ) | **JURY TRIAL DEMANDED** |
| ) | |
| Defendants. ) | |

## CLASS ACTION COMPLAINT

Plaintiff Boyle Construction Management, Inc., on behalf of itself and all others similarly situated, by its attorneys, brings this action for treble damages and injunctive relief under the antitrust laws of the United States, demanding a trial by jury, and makes the following allegations based on information, belief and investigation of counsel, except those allegations that pertain to plaintiff, which are based on personal knowledge:

### SUMMARY OF CLAIMS

1.      This lawsuit is brought as a class action on behalf of all individuals and entities who purchased ready-mixed concrete directly from defendant or its unnamed co-conspirators yet to be identified, or any predecessors, parents, subsidiaries, or affiliates thereof from at least July 1, 2000 through at least May 25, 2004. Plaintiff alleges that defendant and its co-conspirators entered into and engaged in a combination and conspiracy to suppress and eliminate competition by fixing the price of ready-mixed concrete. The combination and conspiracy constituted an unreasonable restraint of trade under federal antitrust law.

2.      Defendant and its co-conspirators carried out their unlawful combination by, *inter alia*, engaging in discussions about the price at which they would sell ready-mixed concrete, agreeing to specific price increases and the timing of such increases, issuing price

announcements or price quotations based on their agreements, and selling ready-mixed concrete at agreed-upon supracompetitive prices.

3.      As a result of the unlawful conduct of defendant and its co-conspirators, plaintiff and other members of the Class paid artificially inflated prices for ready-mixed concrete and have suffered antitrust injury to their business or property.

## JURISDICTION AND VENUE

4.      Plaintiff brings this action for treble damages, costs of suit, attorneys' fees, and injunctive relief under Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26 for the injuries sustained by plaintiff and members of the Class arising from violations of Section 1 of the Sherman Act, 15 U.S.C. § 1.

5.      Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1337, and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15(a) and 26.

6.      Venue in this District is proper pursuant to Sections 4, 12 and 16 of the Clayton Act, 15 U.S.C. §§ 15, 22 and 26, and 28 U.S.C. § 1391.  The combination and conspiracy charged in this Complaint was carried out in substantial part within this District.  Defendants are found, or transact business within this District, and the trade and commerce described in this Complaint was carried out in substantial part within this District.

## DEFINITIONS

7.      As used herein, the following terms have the meanings set forth below:

a.      "Class" includes all Persons in the United States who purchased ready-mixed concrete directly from and Defendant at any time during the Class Period, but excludes Defendants, their co-conspirators, their respective parents, subsidiaries, and affiliates, and federal, state and local government entities and political subdivisions.

b.      "Class Period" means the period from at least July 1, 2000 through at least May 25, 2004.

2

c.     "Ready-mixed concrete" means a product comprised of cement, sand, gravel, water, and occasionally additional additives. Ready-mixed concrete can be made on demand and shipped to work sites by concrete mixer trucks.

d.     "Person" means any individual, partnership, corporation, or other business or legal entity.

## THE PARTIES

8.     Plaintiff Boyle Construction Management, Inc. is an Indiana corporation with its principal place of business in Indianapolis, Indiana. Plaintiff purchased ready-mixed concrete directly from defendant Irving Materials, Inc. and other Indianapolis-area companies during the Class Period.

9.     Defendant Irving Materials, Inc. ("Irving") is an Indiana corporation with its principal place of business in Greenfield, Indiana. During the Class Period, Irving produced and sold ready-mixed concrete to purchasers in the United States, primarily in the Indianapolis metropolitan area.

10.     Various other persons, firms and corporations not named as defendants herein have participated as co-conspirators with Irving and have performed acts in furtherance of the conspiracy. These co-conspirators will be identified as this litigation proceeds and plaintiff will amend its complaint to add them as named defendants at the appropriate time. Upon information and belief, defendant's co-conspirators include, but may not be limited to, other Indianapolis-area companies from which plaintiff purchased ready-mixed concrete directly during the relevant time period.

## TRADE AND COMMMERCE

11.     During all or part of the Class Period, defendant and its co-conspirators produced and/or sold ready-mixed concrete to purchasers in the United States, primarily in the Indianapolis metropolitan area. These business activities substantially affected interstate trade and commerce.

3

Moreover, the ready-mixed concrete produced and sold by defendant Irving is comparable to and interchangeable with the ready-mixed concrete produced and/or sold by Irving's competitors.

## CLASS ACTION ALLEGATIONS

12.     Plaintiff brings this action on behalf of itself and, under Federal Rule of Civil Procedure  23(b)(2) and (b)(3), as representative of the following Class:

> All persons and entities in the United States who purchased ready-mixed concrete directly from defendant or any of its co-conspirators at any time during the Class Period, but excluding defendant, its co-conspirators, their respective parents, subsidiaries, and affiliates, and federal, state and local government entities and political subdivisions.

13.     Plaintiff does not know the exact size of the Class, but alleges that defendant and its co-conspirators possess such information.  Given the trade and commerce involved, plaintiff alleges on information and belief that the Class numbers at least in the hundreds so that joinder of all members is impracticable.

14.     There are questions of law and fact common to the Class, including the existence, scope, and efficacy of the conspiracy alleged.

15.     Plaintiff is a member of the Class, and its claims are typical of the claims of Class members generally.  Plaintiff's claims arise from the same conduct giving rise to the claims of the Class, and the relief plaintiff seeks is common to the Class.

16.     Plaintiff will fairly and adequately protect the interests of the Class.  Plaintiff is represented by competent counsel experienced in the prosecution of class action antitrust litigation.  Plaintiff's interests coincide with, and are not antagonistic to, those of the Class.

17.     Questions of law and fact common to all Class members predominate over any questions affecting only individual Class members.  Predominating common questions include, without limitation:

(a)     whether defendant and its co-conspirators conspired to fix, raise, stabilize or maintain the price of ready-mixed concrete;

4

(b)    the scope and extent of the conspiracy;

(c)    whether the conspiracy affected the prices of ready-mixed concrete paid

by Class members during the Class Period;

(d)    the identity of each member of the conspiracy;

(e)    the time period during with the conspiracy existed;

(f)    whether the combination, agreement or conspiracy violated Section 1 of

the Sherman Act;

(g)    whether plaintiff and other members of the Class are entitled to

declaratory or injunctive relief;

(h)    the appropriate measure of damages sustained by Plaintiff and other

members of the Class; and

(i)    whether defendant and its co-conspirators affirmatively and fraudulently

concealed the conspiracy.

18.    A class action is superior to any other available method for the fair and efficient

adjudication of this controversy.  Indeed, it is the only realistic method for litigating the large

number of claims at issue herein.  Class treatment will permit a large number of similarly

situated persons to prosecute their common claims in a single forum simultaneously and

efficiently.  There are no difficulties likely to be encountered in the management of this lawsuit

that would preclude its maintenance as a class action, and no superior alternative exists for the

fair and efficient adjudication of the controversy.

19.    Defendant and its co-conspirators have acted on grounds generally applicable to

the Class, thereby making final injunctive relief appropriate with respect to the Class as a whole.

5

## VIOLATIONS ALLEGED

20.     Throughout the Class Period, defendant and its co-conspirators engaged in a continuing combination and conspiracy in unreasonable restraint of trade and commerce in ready-mixed concrete in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

21.     This combination and conspiracy consisted of an agreement, understanding and concerted action among defendant and its co-conspirators, the substantial objective of which was to raise and maintain at artificially high levels the prices of ready-mixed concrete.

22.     For the purpose of forming and effectuating their combination and conspiracy, defendant and its co-conspirators did those things which they combined and conspired to do, including, among other things, discussing, forming and implementing agreements to raise and maintain at artificially high levels the prices for ready-mixed concrete.

23.     On June 29, 2005, the United States Department of Justice announced that defendant Irving had agreed to plead guilty and pay a $29.2 million criminal fine, the largest fine ever levied in a domestic antitrust investigation, for conspiring and fixing the price of ready-mixed concrete in violation of the Sherman Act. In addition, four Irving executives agreed to plead guilty, pay fines and serve time in prison for their roles in the conspiracy.

## EFFECTS

24.     As a result of the combination and conspiracy between defendant and its co-conspirators, prices of ready-mixed concrete were artificially increased.

25.     The conduct of defendant and its co-conspirators was undertaken for the purpose and with the specific intent of raising and maintaining prices of ready-mixed concrete and eliminating competition, in *per se* violation of Section 1 of the Sherman Act.

## FRAUDULENT CONCEALMENT

26.     Throughout the Class Period, defendant and its co-conspirators intended to and did affirmatively and fraudulently conceal their wrongful conduct and the existence of their unlawful combination and conspiracy from plaintiff and other members of the Class, and intended that their communications with each other and their resulting actions be kept secret from Plaintiff and other Class members.

27.     Plaintiff and the Class had no knowledge of the wrongful conduct alleged herein or of any of the facts that might have led to discovery thereof, until on or about June 2005, when the U.S. Department of Justice announced the guilty plea entered by Irving Materials, Inc.

28.     Plaintiff and members of the Class could not have discovered the combination and conspiracy alleged herein at any earlier date by the exercise of reasonable due diligence, because of the deceptive practices and techniques of secrecy employed by defendant and its co-conspirators to avoid detection of and affirmatively conceal their actions.

29.     Based on the foregoing, customers of defendant and its co-conspirators, including plaintiff and members of the Class, were unaware that prices for ready-mixed concrete had been artificially raised and maintained as a result of the wrongful conduct as alleged in this Complaint.

## DAMAGES TO PLAINTIFF AND MEMBERS OF THE CLASS

30.     As a direct result of the unlawful conduct alleged in this Complaint, prices for ready-mixed concrete sold by defendant and its co-conspirators were fixed and maintained at artificially high and noncompetitive levels. Plaintiff and members of the Class were not able to purchase ready-mixed concrete at prices determined by free and open competition, and consequently have been injured in their business and property in that, *inter alia*, they have paid more for ready-mixed concrete than they would have paid in a free, open, and competitive market. Plaintiff cannot state at this time the precise amount of damages sustained by Plaintiffs

7

and the Class. A precise determination of damages will require discovery from the books and records of defendant and its co-conspirators. Plaintiff alleges that the damages are substantial.

## JURY TRIAL DEMANDED

31. Plaintiff demands a trial by jury, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, of all issues so triable.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff requests:

A. That the Court determine that this action may be maintained as a class action under Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure, that the Court determine that plaintiff is an adequate and appropriate representative of the Class, that the Court designate plaintiff's attorneys as lead counsel, and that the Court direct that the best notice practicable under the circumstances be given to members of the Class pursuant to Rule 23(c)(2).

B. That the Court adjudge and decree that defendant and its co-conspirators engaged in an unlawful combination and conspiracy in violation of Section 1 of the Sherman Act.

C. That the Court adjudge and decree that defendant and its co-conspirators are jointly and severally liable for threefold the damages resulting from their conduct.

D. That the Court enter judgment for plaintiff and the Class against defendant and it co-conspirators and each of them, jointly and severally, for three times the amount of damages sustained by plaintiff and the Class as allowed by law, together with the costs of this action, including reasonable attorneys' fees.

E. That defendant and its co-conspirators, their respective affiliates, successors, transferees, assignees and the officers, directors, partners, agents and employees thereof, and all other persons acting or claiming to act on their behalf, be restrained from, in any manner:

8

      1)     continuing, maintaining or renewing in any manner the contract,

combination or conspiracy alleged herein, or from engaging in any other contract, combination

or conspiracy having a similar purpose or effect, and from adopting or following any practice,

plan, program or device having a similar purpose or effect; and

      2)     communicating or causing to be communicated in any manner to any other

person engaged in the production, distribution or sale of any product that defendant and its co-

conspirators also produce, distribute or sell, including ready-mixed concrete, information

concerning prices or other terms or conditions of any such product, except to the extent

necessary in connection with a *bona fide* sales transaction between parties to such

communications.

      F.     That the Court grant such additional relief as may be deemed just and proper.

Dated: June 30, 2005                Respectfully Submitted,

                          **Cohen & Malad, LLP**

              By:                                    
                 Irwin B. Levin

Irwin B. Levin
Richard E. Shevitz
Arend J. Abel
Scott D. Gilchrist
**Cohen & Malad, LLP**
One Indiana Square, Suite 1400
Indianapolis, IN 46204
(317) 636-6481
(317) 636-2593 FAX

Michael B. Hyman
Robert J. Wozniak, Jr.
**Much Shelist Freed Denenberg**
 **Ament & Rubenstein, P.C.**
191 North Wacker Drive, Suite 1800
Chicago, IL 60606
(312) 521-2000

9