**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| IN RE: READY-MIXED CONCRETE ANTITRUST LITIGATION, | )  Master Docket No. )  1:05-cv-00979-SEB-JMS ) |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | ) ) ) ) |

**MEMORANDUM IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF**
**SETTLEMENT AGREEMENT WITH MA-RI-AL CORPORATION D/B/A**
**BEAVER MATERIALS CORPORATION, CHRIS BEAVER, AND RICKY BEAVER**

The Plaintiffs, Kort Builders, Inc., Dan Grote, Cherokee Development, Inc.,

Wininger/Stolberg Group, Inc., Marmax Construction, LLC, Boyle Construction Management,

Inc., and T&R Contractor, Inc. (collectively "Plaintiffs"), by Class Counsel, have moved this

Court for an Order preliminarily approving the Settlement Agreement With Defendants MA-RI-

AL Corporation d/b/a Beaver Materials Corporation, Chris Beaver, and Ricky Beaver ("Beaver

Settlement"), preliminarily certifying a Plaintiff Settlement Class, and directing notice of the

Beaver Settlement to members of the Settlement Class.  The Beaver Settlement, which is

attached to the Motion as Exhibit "1," resolves the claims in this action of the Plaintiffs and the

proposed Settlement Class as against Defendants MA-RI-AL Corporation d/b/a Beaver Materials

Corporation, Chris Beaver, and Ricky Beaver (collectively "Beaver Defendants") only, in

exchange for the payment of the sum of $200,000 (the "Settlement Amount").[1]

---

[1] The Beaver Settlement is the sixth settlement agreement reached with Defendants in this case.  On April 4, 2008, the Court entered orders granting final approval to settlements with the Shelby and American Defendants, which together provided settlement funds in the amount of $5.068 million.  (Docket Nos. 546 and 547).  On August 7, 2008 the Court entered an order granting final approval to a settlement with Prairie Material Sales, Inc. n/k/a Southfield Corporation and Gary Matney, which provided settlement funds in the amount of $19 million.  (Docket No. 650).  On December 18, 2009, the Court granted preliminary approval to a settlement with the IMI Defendants, which will provide settlement funds in the

The Beaver Settlement is an optimal result for Class members, in light of the Beaver Defendants' severely limited ability to pay a settlement or judgment.  The Settlement maximizes the possibility of cash payments from the Beaver Defendants with a two-installment schedule, while protecting the status of Class members as creditors in the event of insolvency with an agreed judgment if installments are not paid.   Moreover, the Beaver Settlement follows extensive arms-length negotiations between the Plaintiffs and the Beaver Defendants and the review by Class Counsel and a certified public accountant of financial and asset documentation, reflects the risks to both parties of continued litigation, plainly qualifies as a fair, reasonable and adequate result, and easily satisfies the standards for preliminary approval.

### *Introduction*

The Plaintiffs initiated several actions[2] against the named Defendants in mid-2005, seeking treble damages, costs of suit, attorneys' fees, and injunctive relief under Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, for the injuries sustained by Plaintiffs and class members  arising from violations of Section 1 of the Sherman Act, 15 U.S.C. § 1. The Plaintiffs have alleged that from at least July 1, 2000 through at least May 25, 2004, the Defendants and their co-conspirators, including the Beaver Defendants, entered into and engaged in a combination and conspiracy to suppress and eliminate competition by fixing the price of ready-mixed concrete in the central Indiana area.  Plaintiffs allege that as a result of the unlawful conduct of Defendants and their co-conspirators, Plaintiffs and the other class members paid artificially inflated prices for ready-mixed concrete.

---

amount of $29 million.  (Docket No. 781).  Contemporaneously with the instant Motion, Plaintiffs are seeking preliminary approval of a settlement with Hughey, Inc. d/b/a Carmel Concrete Products and Scott Hughey, which will provide settlement funds in the amount of $375,000.

[2] Several similar actions were filed in this Court against Beaver and the other Defendants, and were consolidated by this Court under the caption set forth above.

The Plaintiffs' actions followed an announcement by the United States Department of Justice ("DOJ"), on June 29, 2005, that the IMI Defendants had agreed to plead guilty and pay a $29.2 million criminal fine for conspiring and fixing prices for ready-mixed concrete in violation of the Sherman Act.  Since the IMI Defendants' guilty pleas, a number of other individual and corporate Defendants have pleaded guilty, or entered into leniency or cooperation agreements with the United States.  The Beaver Defendants were convicted following a jury trial.  *See* Memorandum in Support of Plaintiffs' Motion for Class Certification (Docket No. 401), p. 7 (summarizing Defendants' guilty pleas, convictions and cooperation agreements).

On November 28, 2005, at the request of the DOJ, the Court stayed most discovery in this case pending completion of the criminal proceedings.  The Court lifted the discovery stay on December 19, 2006, following the Beaver criminal trial.  Since the lifting of the discovery stay, the Plaintiffs have received and reviewed literally hundreds of thousands of pages of documents and immense volumes of computerized data.  Discovery obtained by the Plaintiffs has included extensive transactional and financial data from the Defendants from a period before and following the Plaintiffs' proposed class period of July 1, 2000 through May 25, 2004.  The Plaintiffs have also obtained and reviewed testimony and exhibits from the criminal jury trial of the Beaver Defendants, and materials and information prepared or obtained by the Federal Bureau of Investigation ("FBI"). The Plaintiffs have also conducted over 30 depositions, some of them lasting several days, including numerous Rule 30(b)(6) depositions of Defendant representatives, and lengthy depositions of Defendants' three experts.

On August 1, 2007, the Plaintiffs filed their Motion for Class Certification, along with a supporting Memorandum and an extensive appendix of supporting exhibits.  In addition to testimony from the Beaver trial, statements obtained by the FBI, and an affidavit from an FBI

investigator, the Plaintiffs submitted the Declaration of John Beyer, Ph.D.  *See*, Declaration of Irwin B. Levin, Exhibit 37 (Docket No. 398-55 (filed under seal)) ("Beyer Declaration").  The Beyer Declaration applied established economic analysis to show that if the Defendants conspired in the manner alleged by the Plaintiffs their conspiracy impacted all members of the proposed Class, which includes over 5,000 direct purchasers of ready-mixed concrete.

Following the submission of briefs and materials in opposition to class certification, and the submission by Plaintiffs of additional materials in support, the Court granted the Plaintiffs' motion for class certification on September 9, 2009, and certified a Plaintiff Class composed "all Persons who purchased Ready-Mixed Concrete directly from any of the Defendants or any of their co-conspirators, which was delivered from a facility within the Counties of Boone, Hamilton, Hancock, Hendricks, Johnson, Madison, Marion, Monroe, Morgan, or Shelby, in the State of Indiana, at any time during the period from and including July 1, 2000 through and including May 25, 2004, but excluding Defendants, their co-conspirators, their respective parents, subsidiaries, and affiliates, and federal, state, and local government entities and political subdivisions."  (Docket No. 738).  On September 23, 2009, Builders, Beaver and IMI Defendants filed a Rule 23(f) Petition with the Seventh Circuit seeking permission to take an interlocutory appeal of the class certification order.  The Seventh Circuit rejected that request, however, allowing the claims to proceed to trial as a class action.

### *The Beaver Settlement*

The Beaver Settlement is the result of negotiations between Class Counsel and counsel for Beaver spanning at least two years.  The recent negotiations leading to settlement began with a mediation session carefully planned with the assistance of Magistrate Jane Magnus-Stinson and conducted by mediator Eric D. Green.  The preparation for mediation included several meetings

with Defendants' counsel, the review of data and discovery produced by all Defendants during the course of litigation, the production by Defendants of additional transactional data, and the preparation and in-person presentation of damages analyses by both Plaintiffs' and Defendants' experts.  Although the mediation did not immediately result in a settlement with the Beaver Defendants, additional meetings and the further exchange of information followed the mediation, eventually leading to settlement.  The written Beaver Settlement Agreement presented to the Court for approval therefore resulted from extensive, arms-length negotiations between counsel for Plaintiffs and the Beaver Defendants.

The terms of the Beaver Settlement are straightforward, and consistent with those found in similar settlements for claims brought under Section 1 of the Sherman Act for price fixing, including the American, Shelby, Prairie, IMI and Hughey Settlements.  The key elements of the Beaver Settlement are as follows:

- The certification as to the Beaver Defendants, pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3), of a Settlement Class, the appointment of the Plaintiffs to represent the Settlement Class, and the appointment of Interim Co-Lead Counsel as Settlement Class Counsel;

- The issuance of notice of the Settlement, by mail and publication, advising members of the Settlement Class of the terms of the Settlement and their right to exclude themselves from or object to the Settlement;

- The scheduling of a final fairness hearing to consider whether the Settlement should be finally approved;

- The payment by Beaver of $200,000, in two $100,000 installments, into a Settlement Fund for the benefit of the Settlement Class;

- The entry of a judgment in favor of the Class and against MA-RI-AL Corporation, in the amount of Ninety-Four Million, Six Hundred Fifty Thousand, Two Hundred Eighty-One Dollars ($94,650,281), if the $200,000 settlement amount is not paid as scheduled;

- The continuing cooperation and assistance of the Beaver Defendants in the Plaintiffs' prosecution of this action against the remaining Defendants, including as necessary affidavits and declarations under oath, trial testimony, and depositions if the Beaver Defendants' cooperation cannot be secured voluntarily;

- An agreement by the Beaver Defendants not to oppose Settlement Class Counsel's request for Court approval of the payment of attorneys' fees in an amount not to exceed 33 1/3 % of the Settlement Amount, and reimbursement of reasonable expenses, to be paid from the Settlement Fund; and

- The release of claims that were or could have been asserted in this action against the Beaver Defendants and related persons by the Plaintiffs and Settlement Class members, and a final judgment dismissing the Plaintiffs' and Settlement Class members' claims against the Beaver Defendants.

The Beaver Settlement does not result in a release or dismissal of the claims of the Plaintiffs and Settlement Class Members against any other Defendants.  Indeed, the Beaver Settlement is consistent with and recognizes the right of the Plaintiffs and Settlement Class members, under the Sherman and Clayton Acts, to continue to seek, from all other Defendants, treble the damages resulting from all Defendants' – including the Beaver Defendants' – participation in the conspiracy.

The Beaver Defendants' settlement payments will be deposited into an escrow account established by Settlement Class Counsel at a commercial bank and maintained as the Settlement

Fund.  Settlement Class Counsel will seek permission from the Court to make distributions from the Settlement Fund to Class members.  It is proposed that distribution of amounts from the Settlement Fund be in direct proportion to the amount of a Class member's purchases of ready-mixed concrete from the Defendants at any time from July 1, 2000 through May 25, 2004, a distribution method previously approved by this Court for prior settlements.   Class Counsel will seek Court approval of a claims protocol and a claim form with information about the proposed distribution and instructions for submitting a claim to be provided to Class members.

### Standard for Preliminary Approval

It is well-established that a district court's approval of a class action settlement should proceed in two steps.  The first step is to determine whether to conditionally certify a settlement class and to notify class members of the pending settlement and their right to participate in a final fairness hearing.  The second step is the fairness hearing itself, which can occur only after class members have been notified of their right to participate in the hearing or to opt out of the class altogether.  *See*, Federal Judicial Center's Manual for Complex Litigation, Fourth §§ 21.622-23 (2006).

If the district court finds a settlement proposal "within the range of possible approval," preliminary approval is granted and class members are notified of the proposed settlement and the fairness hearing at which they and all interested parties have an opportunity to be heard. *Gautreaux v. Pierce,* 690 F.2d 616, 621 n.3 (7th Cir. 1982) (citations omitted).  The Seventh Circuit has adopted a "probable cause" approach to the preliminary approval stage of considering a proposed class action settlement:

> The first step involves a preliminary determination as to whether notice of the proposed settlement should be given to members of the class and a hearing scheduled at which evidence in support of and in opposition to the proposed settlement will be received. Unless the judge is preliminarily satisfied that the

proposed settlement is within the range of possible approval, there is no point in proceeding with notice and a hearing. **"Such a preliminary hearing is not, of course, a definative (sic) proceeding on the fairness of the proposed settlement ... . * * * (I)t is simply a determination that there is, in effect, 'probable cause' to submit the proposal to members of the class** and to hold a full scale hearing on its fairness at which all interested parties will have an opportunity to be heard after which a formal finding of fairness will be made."

*In re General Motors Engine Interchange Litig.,* 594 F.2d 1106, 1133 (7th Cir. 1979) (emphasis added), *quoting* Manual for Complex Litigation § 1.46 (1977).

Generally, the court "bases its preliminary approval of a proposed settlement upon its familiarity with the issues and evidence of the case as well as the arms-length nature of the negotiations prior to the settlement." *In re Telectronics Pacing Systems, Inc.,* 137 F.Supp.2d 985, 1026 (S.D. Ohio 2001), *citing In re Dun & Bradstreet Credit Servs. Litig.,* 130 F.R.D. 366, 370 (S.D. Ohio 1990). "A preliminary fairness assessment is not to be turned into a trial or rehearsal for trial on the merits, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *In re Inter-Op Hip Prosthesis Liability Litig.,* 204 F.R.D. 330, 350 (N.D. Ohio 2001).

The management of a class action rests largely within the district court's discretion. *Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust Co. of Chicago,* 834 F.2d 677, 684 (7th Cir. 1987). It is therefore within this Court's discretion whether, and to what extent, it should conduct a hearing prior to preliminary approval. *Id.* at 684. As the court in *Mars Steel* held, an evidentiary hearing plainly is not required. *See also, Patterson v. Stovall,* 528 F.2d 108 (7th Cir. 1976) (no error in district court's failure to hold evidentiary hearing either before preliminary approval or final approval); *In re General Motors,* 594 F.2d at 1133 (same). Given the Court's familiarity with this case following years of litigation, and the inherent risks of further litigation

against the Beaver Defendants, Class Counsel believe that it would be appropriate to proceed with preliminary approval without a hearing.

### The Court Should Preliminarily Approve the Beaver Settlement

Under the standard discussed above the terms of the Beaver Settlement are well within the range of possible approval.  As this Court has recognized, the "bar is low" when considering a settlement for preliminary approval.  *In re Bromine Antitrust Litig.,* 203 F.R.D. 403, 416 (S.D. Ind. 2001).  Here, that bar is easily cleared and probable cause exists to certify the Settlement Class and issue notice of a final fairness hearing.

The most significant factor supporting the fairness of the Beaver Settlement is the financial inability of the Beaver Defendants to satisfy a substantial judgment.  During the course of recent negotiations, the Beaver Defendants have provided Settlement Class Counsel detailed financial records, personal interviews and answers to specific inquiries.  Settlement Class Counsel have been assisted in this review, and accompanied during certain meetings, by a Certified Public Accountant who has advised Settlement Class Counsel concerning the Beaver Defendants' ability to pay a settlement or satisfy a judgment.

As confirmed by a Certified Public Accountant's investigation, including review of corporate and individual financial records, an extensive interview of a corporate representative and a confirmatory sworn affidavit, the Beaver Defendants' ability to pay a settlement or satisfy a judgment is extremely limited and is unlikely to improve in the reasonable future.  Thus, although the Beaver Defendants face the possibility of joint and several liability for treble damages well in excess of $100 million, a settlement assessment based upon a simple risk analysis would be unrealistic.  Instead, Settlement Class Counsel believe that the Settlement Amount of $200,000 exceeds the amount that the Settlement Class could reasonably expect to

actually recover from the Beaver Defendants after expensive litigation, and is therefore is a highly favorable result.

The terms of the Beaver Settlement also reflect the risk of the Beaver Defendants' inability to pay even this highly discounted settlement amount.  In the event that the Beaver Defendants fail to pay either installment of the $200,000 settlement amount, the terms of the settlement call for the Court enter a judgment in favor of the Class and against MA-RI-AL Corporation, in the amount of Ninety-Four Million, Six Hundred Fifty Thousand, Two Hundred Eighty-One Dollars ($94,650,281).  By restoring to the Plaintiff Class a judgment for an estimated amount of their requested damages from Beaver, the entry of such a judgment places the Class in a superior position to unsecured creditors in the event that the Beaver Defendants become insolvent.

Nonetheless, the Beaver Settlement is supported by the difficulties of obtaining a substantial judgment against the Beaver Defendants at trial.  Although the Beaver Defendants have been convicted of criminal violations of the Sherman Act, all the Defendants have presented an energetic and extremely vigorous defense as to the extent of the conspiracy and to the Plaintiffs' claims of class-wide impact and damages.  In order to obtain a significant judgment against the Beaver Defendants at trial, Plaintiffs and the Class would be required to overcome these efforts to show that the conspiracy was extremely limited in scope, was ineffective and caused little damage to purchasers.  Plaintiffs and the Class would also face the prospect of an appeal from any significant judgment, in which damages and the Court's certification of a litigation class would be challenged.  These risks of further litigation also support the reasonableness of the Beaver Settlement.

Finally, like previous settlements approved by the Court in this case, the Beaver Settlement preserves the rights of the Plaintiffs and Settlement Class to pursue the full value of their claims – less any setoff for the settlement payment – against any non-settling Defendant. Neither the release nor the dismissal contemplated by the Beaver Settlement will affect claims against the remaining Defendants, and the Beaver Defendants are required to provide useful cooperation to Settlement Class Counsel in pursuing these claims.  The other Defendants will remain jointly and severally liable for damages caused by Beaver's participation, with them, in a conspiracy to fix the price of ready-mixed concrete.

### *The Beaver Settlement Class*

Pursuant to the Settlement Agreement and Federal Rules of Civil Procedure 23(a) and 23(b)(3), the Court should certify the following Settlement Class:

> All Persons who purchased Ready-Mixed Concrete directly from any of the Defendants or any of their co-conspirators, which was delivered from a facility within the Counties of Boone, Hamilton, Hancock, Hendricks, Johnson, Madison, Marion, Monroe, Morgan, or Shelby, in the State of Indiana, at any time during the period from and including July 1, 2000 through and including May 25, 2004, but excluding Defendants, their co-conspirators, their respective parents, subsidiaries, and affiliates, and federal, state, and local government entities and political subdivisions.

For the reasons set forth in the Plaintiffs' Memorandum in Support of Motion for Class Certification (Docket No. 401), and the Court's order certifying a Plaintiff Class for litigation, which are incorporated herein by reference, the proposed Settlement Class easily meets the requirements of Rules 23(a) and (b).  As discussed therein, the Settlement Class numbers in the thousands (numerosity); the Plaintiffs assert claims identical to, and not in conflict with, the claims of Settlement Class members (typicality); the claims of the Plaintiffs and Settlement Class members share nearly identical issues of liability and damages (commonality); the Plaintiffs have displayed their commitment to this action throughout the litigation, through answering extensive

discovery and participating in depositions, and have no interest antagonistic to the Class (adequacy of Plaintiffs); and proposed Settlement Class Counsel are well experienced in complex and class action litigation, including antitrust matters (adequacy of counsel).

As Plaintiffs have illustrated in support of the certification of a litigation class, and as the Court has now found, the requirements of Rule 23(b), "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy," are easily met in this case. The Supreme Court has noted that Rule 23(b)(3)'s predominance requirement is "readily met" in antitrust cases like this one. *Amchem Prods. v. Windsor*, 521 U.S. 591, 625 (1997). More recently, Judge Frost in the *Foundry Resins* case explained that "[a]s a general rule in antitrust price-fixing cases . . . courts have consistently found that common issues regarding the existence and scope of the conspiracy predominate over questions affecting only individual members." *In re Foundry Resins Antitrust Litig.*, 242 F.R.D. 393, 408 (S.D. Ohio 2007).

Indeed, in the context of settlement, the requirements of Rule 23(b) are even more easily met. In *Amchem Products,* the United States Supreme Court recognized that "[s]ettlement is relevant to class certification." *Amchem Products,* 521 U.S. at 619. Specifically, the Court explained: "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Id.* at 620 (citing Fed. R. Civ. P. 23(b)(3)(D)). Of course, the Plaintiffs do not believe that manageability should be a concern for the Court when considering certification of a litigation class in this matter. Nonetheless, the decidedly lower

standard applied to this aspect of Rule 23(b) in the settlement context makes preliminary certification of the Settlement Class particularly appropriate.

In addition to the certification of a Settlement Class, the Beaver Settlement sets forth a comprehensive method of providing notice of the Settlement to Class members that is consistent with the settlement notice programs previously approved by the Court.  Due process requires direct notice to all class members who can be identified through reasonable effort.  *See, Eisen v. Carlisle & Jacqueline,* 417 U.S. 156, 173-77 (1974); *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797 (1985).  The Beaver Settlement calls for direct mail notice to all persons falling within the Settlement Class definition, based upon information that has been provided by Defendants. Beaver and all other Defendants have previously provided information used for this purpose in connection with the Shelby, American, Prairie and IMI Settlements.  The mailed notice, in the question-and-answer format proposed by the Federal Judicial Center for class action settlement notices, provides a thorough explanation of the Settlement and Class members' rights.  The form of the proposed mailed notice is attached to the Beaver Settlement as Exhibit "A."

The Beaver Settlement also calls for published notice to appear twice in the *Indianapolis Star*.  Though a summary notice, the proposed published notice also provides a thorough explanation of the Settlement and Class members' rights, as well as a means to obtain additional information from Settlement Class Counsel, from the Court-approved Settlement Claims Administrator, and from a Settlement website that provides additional information and access to documents from the litigation and the Beaver Settlement.  With regard to potential class members who cannot be identified through reasonable effort, or who have changed addresses, notice by publication is recognized as a suitable method for providing notice of the litigation and certification order.  WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D, §

1786.  *See also,* ALBA CONTE & HERBERT NEWBERG, NEWBERG ON CLASS ACTIONS (4th ED.), §

8:2.  The form of the proposed published notice is attached to the Beaver Settlement as Exhibit

"B."

The combined form of mailed and published notice proposed under the Beaver

Settlement provides "the best notice practicable under the circumstances."  Fed. R. Civ. P.

23(c)(2).  The proposed forms of notice will adequately inform Class members of the terms of

the Settlement, the Court's preliminary approval and certification of a Settlement Class, the

rights of Class members to exclude themselves from or object to the Settlement, and the setting

of a final hearing to consider the fairness of the Settlement.  The Court should therefore approve

the proposed methods and form of notice and direct its consummation according to the terms of

the Beaver Settlement.

Finally, preliminary approval of the Beaver Settlement is supported by the Court's final

approval of the Shelby, American and Prairie Settlements, and the materials submitted by Class

Counsel in support thereof.  The methods of notice approved by the Court for those Settlements

have been successfully employed in practice, and the data employed to identify Class members

has been further refined as Settlement Class Counsel and the Claims Administrator communicate

with Class members.  The substantially identical procedures of the Beaver Settlement also satisfy

Rule 23, meet the expectations of Class members, and warrant preliminary approval.

### Conclusion

In light of the foregoing, the Plaintiffs respectfully request the Court's preliminary

approval of the the Settlement Agreement With Defendants MA-RI-AL Corporation d/b/a

Beaver Materials Corporation, Chris Beaver, and Ricky Beaver, preliminary certification of the

Settlement Class, approval of the form and method of notice of the Beaver Settlement to

members of the Settlement Class, and approval and entry of the Preliminary Approval Order in

the form attached to the Beaver Settlement as Exhibit "C" and submitted herewith.


Dated:   February 1, 2010                          Respectfully submitted,


                                                   /s/ Irwin B. Levin
                                                   Irwin B. Levin

                                                   Irwin B. Levin
                                                   Richard E. Shevitz
                                                   Scott D. Gilchrist
                                                   Eric S. Pavlack
                                                   Vess A. Miller
                                                   COHEN & MALAD, LLP
                                                   One Indiana Square, Suite 1400
                                                   Indianapolis, IN  46204
                                                   Telephone:  (317) 636-6481
                                                   Facsimile:  (317) 636-2593
                                                   ilevin@cohenandmalad.com

                                                   Stephen D. Susman
                                                   Barry C. Barnett
                                                   Jonathan Bridges
                                                   Warren T. Burns
                                                   Garrick B. Pursley
                                                   SUSMAN GODFREY LLP
                                                   901 Main St., Ste. 4100
                                                   Dallas, TX 75202
                                                   Telephone:  (214) 754-1903
                                                   Facsimile:  (214) 754-1933

                                                   *PLAINTIFFS' INTERIM CO-LEAD COUNSEL*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 1, 2010, a copy of the foregoing document, was filed electronically.  Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

Anthony P. Aaron
ICE MIILER
Anthony.aaron@icemiller.com

G. Daniel Kelley, Jr.
ICE MILLER
daniel.kelley@icemiller.com

Thomas E. Mixdorf
ICE MILLER
thomas.mixdorf@icemiller.com

Edward P. Steegmann
ICE MILLER
ed.steegmann@icemiller.com

Abigail B. Cella
ICE MILLER
abby.cella@icemiller.com

Barry C. Barnett
SUSMAN GODFREY LLP
bbarnett@susmangodfrey.com

Jonathan Bridges
SUSMAN GODFREY LLP
jbridges@susmangodfrey.com

Stephen D. Susman
SUSMAN GODFREY LLP
ssusman@susmangodfrey.com

Robert J. Bonsignore
BONSIGNORE & BREWER
rbonsignore@aol.com
Jason R. Burke
HOPPER & BLACKWELL
jburke@hopperblackwell.com

David Bullington
HOPPER & BLACKWELL
dbullington@hopperblackwell.com

Kenneth J. Munson
BINGHAM McHALE LLP
kmunson@binghammchale.com

Lee B. McTurnan
BINGHAM McHALE LLP
lmcturnan@binghammchale.com

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
steve@hbsslaw.com

Anthony D. Shapiro
HAGENS BERMAN SOBOL SHAPIRO LLP
tony@hbsslaw.com

James A.L. Buddenbaum
PARR RICHEY OBREMSKEY & MORTON
jbuddenbaum@parrlaw.com

Lawrence J. Carcare, II
INDIANA STATE ATTORNEY GENERAL
lcarcare@atg.state.in.us

Vincent J. Esades
HEINS MILLS & OLSON
vesades@heinsmills.com

Troy J. Hutchinson
HEINS MILLS & OLSON
thutchinson@heinsmills.com

Thomas J. Grau
DREWRY SIMMONS VORNEHM, LLP
tgrau@drewrysimmons.com

Joseph M. Leone
DREWRY SIMMONS VORNEHM, LLP
jleone@drewrysimmons.com

George W. Hopper
HOPPER & BLACKWELL
ghopper@hopperblackwell.com
Jay S. Cohen

SPECTOR ROSEMAN & KODROFF &
WILLIS, PC
jcohen@srk-law.com

Jeffrey J. Corrigan
SPECTOR ROSEMAN & KODROFF &
WILLIS, PC
jcorrigan@srk-law.com

Jeffrey L. Kodroff
SPECTOR ROSEMAN & KODROFF &
WILLIS, PC
jkodroff@srk-law.com

Eugene A. Spector
SPECTOR ROSEMAN & KODROFF &
WILLIS, PC
espector@srk-law.com

Michael L. Coppes
EMSWILLER WILLIAMS NOLAND &
CLARKE PC
mcoppes@ewnc-law.com

Lisa J. Frisella
THE MOGIN LAW FIRM
lisa@moginlaw.com

Chad M. McManamy
THE MOGIN LAW FIRM
chad@moginlaw.com

Daniel J. Mogin
THE MOGIN LAW FIRM
dmogin@moginlaw.com

Michael D. Gottsch
CHIMICLES & TIKELLIS LLP
michaelgottsch@chimicles.com

Mark K. Gray
GRAY & WHITE
mkgrayatty@aol.com

David B. Vornehm
DREWRY SIMMONS PITTS &
VORNEHM
dvornehm@drewrysimmons.com

Betsy K. Greene
GREENE & SCHULTZ
bkgreene@kiva.net

Frederick W. Schultz
GREENE & SCHULTZ
fschultz@kiva.net

Theresa Lee Groh
MURDOCK GOLDENBERG
SCHNEIDER & GROH LPA
tgroh@mgsglaw.com

John C. Murdock
MURDOCK GOLDENBERG
SCHNEIDER & GROH LPA
jmurdock@mgsglaw.com

Gregory P. Hansel
PRETI FLAHERTY BELIVEAU
PACHIOS & HALEY LLP
ghansel@preti.com

Randall B. Weill
PRETI FLAHERTY BELIVEAU
PACHIOS & HALEY LLP
rweill@preti.com

William E. Hoese
KOHN SWIFT & GRAF PC
whose@kohnswift.com

Joseph C. Kohn
KOHN SWIFT & GRAF PC
jkohn@kohnswift.com

Daniel R. Karon
GOLDMAN SCARLATO & KARON PC
karon@gsk-law.com

Offer Korin
KATZ & KORIN
okorin@katzkorin.com

Matthew L. White
GRAY & WHITE
mattwhiteatty@aol.com

Geoffrey Mitchell Grodner
MALLOR CLENDENING GRODNER &
BOHRER
gmgrodne@mcgb.com

Patrick B. Omilian
MALLOR CLENDENING GRODNER &
BOHRER LLP
pomilian@mcgb.com

James H. Ham, III
BAKER & DANIELS
jhham@bakerd.com

Kathy L. Osborn
BAKER & DANIELS
klosborn@bakerd.com

Robert K. Stanley
BAKER & DANIELS
rkstanley@bakerd.com

Matthew Lamkin
BAKER & DANIELS
matthew.lamkin@bakerd.com

Ryan M. Hurley
BAKER & DANIELS
ryan.hurley@bakerd.com

Michael B. Hyman
MUCH SHELIST
mbhyman@muchshelist.com

Robert J. Wozniak, Jr.
MUCH SHELIST
rwozniak@muchshelist.com

Deborah J. Caruso
U.S. Bankruptcy Trustee
DALE & EKE, P.C.
dcaruso@daleeke.com

Gene R. Leeuw
LEEUW OBERLIES & CAMPBELL PC
grleeuw@indylegal.net

Cathleen L. Nevin
KATZ & KORIN
cnevin@katzkorin.com

Bernard Persky
GOODKIND LABATON RUDOFF &
SUCHAROW LLP
bpersky@labaton.com

Kellie C. Safar
GOODKIND LABATON RUDOFF &
SUCHAROW LLP
ksafar@labaton.com

Hollis L. Salzman
GOODKIND LABATON RUDOFF &
SUCHAROW LLP
hsalzman@labaton.com

John R. Price
JOHN R. PRICE & ASSOCIATES
john@johnpricelaw.com

Robert J. Schuckit
SCHUCKIT & ASSOCIATES PC
rschuckit@schuckitlaw.com

Lawrence Walner
LAWRENCE WALNER &
ASSOCIATES
walner@walnerclassaction.com

Judy Woods
BOSE McKINNEY & EVANS LLP
jwoods@boselaw.com

Bryan Babb
BOSE McKINNEY & EVANS LLP
bbabb@boselaw.com

Curtis Jones
BOSE McKINNEY & EVANS LLP
cjones@boselaw.com

Melinda Shapiro
BOSE McKINNEY & EVANS LLP
mshapiro@boselaw.com

C. Joseph Russell
BOSE McKINNEY & EVANS LLP
crussell@boselaw.com

John M. Mead
LEEUW OBERLIES & CAMPBELL PC
jmead@indylegal.net

J. Lee McNeely
McNEELY STEPHENSON THOPY &
HARROLD
jlmcneely@msth.com

Brady J. Rife
McNEELY STEPHENSON THOPY &
HARROLD
bjrife@msth.com

Henry J. Price
PRICE WAICUKAUSKI RILEY &
DEBROTA
hprice@price-law.com

Ronald J. Waicukauski
PRICE WAICUKAUSKI RILEY &
DEBROTA
rwaicukauski@price-law.com

William N. Riley
PRICE WAICUKAUSKI RILEY &
DEBROTA
wriley@price-law.com

Jamie Kendall
PRICE WAICUKAUSKI RILEY &
DEBROTA
jkendall@price-law.com

Christopher A. Moeller
PRICE WAICUKAUSKI RILEY &
DEBROTA
cmoeller@price-law.com

Matthew R. Laydon
PRICE WAICUKAUSKI RILEY &
DEBROTA
mlaydon@price-law.com

Joseph N. Williams
PRICE WAICUKAUSKI RILEY &
DEBROTA
jwilliams@price-law.com

Steven M. Badger
BOSE McKINNEY & EVANS LLP
sbadger@boselaw.com

Allyson M. Maltas
LATHAM & WATKINS LLP
allyson.maltas@lw.com

Joshua P. Dehnke
LATHAM & WATKINS LLP
joshua.dehnke@lw.com

Chris Gair
JENNER BLOCK
cgair@jenner.com

Joseph R. Whatley, Jr.
WHATLEY DRAKE LLC
jwhatley@whatleydrake.com

Edward W. Harris, III
TAFT STETTINIUS & HOLLISTER LLP
eharris@taftlaw.com

Gayle A. Reindl
TAFT STETTINIUS & HOLLISTER LLP
greindl@taftlaw.com

Jonathan G. Polak
TAFT STETTINIUS & HOLLISTER LLP
jpolak@taftlaw.com

Abram B. Gregory
TAFT STETTINIUS & HOLLISTER LLP
agregory@taftlaw.com

Patricia Polis McCrory
LOCKE REYNOLDS LLP
pmccrory@locke.com

John E. Scribner
WEIL GOTSHAL & MANGES
johnscribner@weil.com

Marie L. Mathews
WEIL GOTSHAL & MANGES
marie.mathews@weil.com

Gary P. Price
LEWIS & KAPPES
gprice@lewis-kappes.com

Mindee J. Reuben
WEINSTEIN KITCHENOFF & ASHER LLC
reuben@wka-law.com

Samuel Charnoff
ARENT FOX LLP
charnoff.samuel@arentfox.com

Robert S. Schachter
ZWERLING SCHACHTER & ZWERLING
LLP
rschachter@zsz.com

Wareewan Tina Charoenpong
MUNGER TOLLES & OLSON
tina.charoenpong@mto.com

Justin M. Tarshis
ZWERLING SCHACHTER & ZWERLING
LLP
jtarshis@zsz.com

Rohit Kumar Singla
MUNGER TOLLES & OLSON
rohit.singla@mto.com

I hereby certify that on February 1, 2010, a copy of the foregoing document was mailed, by first-class U.S. Mail, postage prepaid and properly addressed to the following:

Steven A. Asher
WEINSTEIN KITCHENOFF
& ASHER, LLC
1845 Walnut St., Ste. 1100
Philadelphia, PA 19103

W. Joseph Bruckner
Yvonne M. Flaherty
Richard A. Lockridge
LOCKRIDGE GRINDAL NAUEN PLLPL
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401

Kathleen C. Chavez
CHAVEZ LAW FIRM
416 S. Second St.
Geneva, IL 60134

Krishna B. Narine
LAW OFFICE OF KRISHNA B. NARINE
7839 Montgomery Avenue
Elkins Park, PA 19027

Isaac L. Diel
LAW OFFICES OF ISAAC L. DIEL
135 Oak St.
Bonner Springs, KS 66012

Robert Foote
FOOTE MEYERS MIELKE &
FLOWERS, LLC
416 S. Second St.
Geneva, IL 60134

Samuel D. Heins
Vincent J. Esades
HEINS MILLS & OLSON PLC
310 Clifton Avenue
Minneapolis, MN 55403

James R. Malone
CHIMICLES & TIKELLIS, LLP
361 W. Lancaster Ave.
Haverford, PA 19041

L. Kendall Satterfield
Richard M. Volin
FINKELSTEIN, THOMPSON &
LOUGHRAN
1050 30th St., N.W.
Washington, D.C. 20007

Stewart M. Weltman
COHEN MILSTEIN HAUSFELD
 & TOLL PLLC
39 S. LaSalle St., Ste. 1100
Chicago, IL 60603

Mr. Scott D. Hughey
4462 Abbey Drive
Carmel, IN  4033-2456

/s/ Irwin B. Levin
Irwin B. Levin
COHEN & MALAD, LLP
One Indiana Square, Suite 1400
Indianapolis, IN  46204
Telephone:  (317) 636-6481
ilevin@cohenandmalad.com