**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| IN RE: READY-MIXED CONCRETE ANTITRUST LITIGATION, | ) Master Docket No.<br>) 1:05-cv-00979-SEB-JMS<br>)<br>) |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | )<br>)<br>)<br>) |

**ORDER GRANTING PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD OF CLASS REPRESENTATIVES' INCENTIVE FEE FROM IMI SETTLEMENT**

Plaintiffs, Kort Builders, Inc., Dan Grote, Cherokee Development, Inc., Wininger/ Stolberg Group, Inc., Marmax Construction, LLC, Boyle Construction Management, Inc., and T&R Contractor, Inc. (collectively "Plaintiffs"), by Settlement Class Counsel ("Class Counsel"), have filed their Motion for Award of Attorneys' Fees, Reimbursement of Expenses, and Award of Class Representatives' Incentive Fee from IMI Settlement ("Fee Motion") and supporting materials. Having reviewed the Fee Motion, the Declaration of Irwin B. Levin ("Levin Dec.") and materials submitted therewith, and the Memorandum in support of the Fee Motion, the Court now finds and orders as follows:

1. On December 18, 2009, the Court entered its Order Preliminarily Approving Settlement, Certifying Settlement Class, and Directing Notice (Doc. No. 781), which granted preliminary approval to the Settlement Agreement With Defendants Irving Materials, Inc., Fred R. (Pete) Irving, Daniel Butler, John Huggins and Price Irving (Doc. No. 776-1) ("IMI Settlement"). Under the terms of the IMI Settlement, IMI is to pay the sum of $29 million for the benefit of the Settlement Class, no later than April 1, 2010, or five (5) days after the Court's

entry of an Order and Final Judgment if such entry occurs after April 1, 2010.  IMI Settlement, ¶ 22.

    2.    The IMI Settlement provides for the settlement amount to be paid into a "Settlement Fund" subject to the jurisdiction of the Court and to be administered for the benefit of the Settlement Class by Class Counsel.  IMI Settlement, ¶¶ 22, 25.  The IMI Settlement further provides that Plaintiffs and Class Counsel shall have the right to seek, and the IMI Defendants shall not oppose, Court approval of payments from the Settlement Fund for distribution to Settlement Class members or to reimburse Class Counsel for reasonable expenditures made or to be made by Class Counsel in the prosecution of the Action against the Other Defendants.  IMI Settlement, ¶ 26.

    3.    The intention of Class Counsel to seek the payment of such expenses from the IMI Settlement Fund was brought to the attention of Settlement Class members.  IMI Settlement, Exhibit A (mailed Notice), ¶ 7 ("Class Counsel will seek Court permission to distribute the Settlement Fund to Class Members and to pay amounts approved by the Court for Class Counsel's attorneys' fees and reasonable expenses, reasonable future expenditures made or to be made by Class Counsel on behalf of Class Members to pursue the Lawsuit against the Defendants other than the IMI Defendants, notices to Class Members, and incentive payments to the class representatives").

    4.    With regard to the payment of attorneys' fees, litigation expenses and incentive fees, the IMI Settlement contains the following provision:

> Class Counsel shall be reimbursed and paid solely out of the Settlement Fund for all fees and expenses including, but not limited to, attorneys' fees and expenses. Plaintiffs and Class Counsel shall seek, and the IMI Defendants shall not oppose, the Court's approval of the payment of attorneys' fees in the amount of 33 1/3 % of the Settlement Amount, reimbursement of reasonable expenses, and incentive payments to the Plaintiffs, to be paid from the Settlement Fund.

IMI Settlement, ¶ 27.  The actual distribution of any such approved payments shall not occur until after the Effective Date of the IMI Settlement.  *Id.*

     5.     The notice also specifically advised Settlement Class Members that Class Counsel will seek the payment of attorneys' fees in the amount of one-third of the Settlement, as well as the reimbursement of expenses, and that the IMI Defendants will not oppose this request:

> Class Counsel will file a petition with the Court no later than seven days prior to the Fairness Hearing asking for payment of attorneys' fees in the amount of 33 1/3 % of the Settlement Amount, and the reimbursement of reasonable expenses, to be paid from the Settlement Fund, which petition will be available on the settlement website. The Court may consider whether to approve the payment of attorneys' fees and expenses in this amount during the Fairness Hearing, or at a later time determined by the Court.
>
> The IMI Defendants have agreed not to oppose a request by Class Counsel for a payment of attorneys' fees in the amount of 33 1/3 % of the Settlement Amount, and the reimbursement of reasonable expenses, to be paid from the Settlement Fund.  If the Court approves these fees and expenses, they will be paid from the Settlement Fund.  … .

IMI Settlement, Exhibit A (mailed Notice), ¶ 17.   Further, the Fee Motion, the supporting Memorandum and the Levin Declaration were posted on the settlement website.  Levin Dec., ¶ 9.

     6.     Class Counsel request an award of attorneys' fees in the amount of 33 1/3 % of the IMI Settlement Fund, or $9,666,667, which is not opposed by IMI.  Levin Dec., ¶ 10.  Class Counsel also request a reimbursement of expenses from the IMI Settlement Fund in the amount of $463,887.93.  *Id.*  Finally, Plaintiffs and Class Counsel have requested an incentive fee award from the IMI Settlement Fund to each of the named Plaintiffs in the amount of $10,000.  Levin Dec., ¶¶ 24-27.

     7.     On March 31, 2009, the Court entered its Order Granting Plaintiffs' Motion for Approval of Proposed Plan of Distribution of Settlement Funds, Award of Attorneys' Fees and Reimbursement of Expenses, and Award of Class Representatives' Incentive Fees (Doc. No.

732) ("Distribution Order").  The Distribution Order applied to the combined Settlement Funds from the American, Shelby and Prairie Settlements.  The Court's analysis of fees, expenses and incentive awards in the Distribution Order also applies to the Plaintiffs' present request for fees, expenses and incentive awards from the IMI Settlement Fund, which the Court incorporates here in full and as detailed below.

8. The Court finds that Class Counsel are entitled to compensation under the common fund doctrine for their efforts in creating the IMI Settlement Fund for the benefit of class members.  *In re Cont'l Ill. Sec. Litig.,* 962 F.2d 566, 568 (7th Cir. 1992), citing *Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980).

> When a case results in the creation of a common fund for the benefit of the plaintiff class, the common fund doctrine allows plaintiffs' attorneys to petition the court to recover its fees out of the fund.  In such a case, the defendant typically pays a specific sum into the court, in exchange for a release of its liability. The court then determines the amount of attorney's fees that plaintiffs' counsel may recover from this fund, thereby diminishing the amount of money that ultimately will be distributed to the plaintiff class.

*Florin v. Nationsbank of Georgia, N.A.*, 34 F.3d 560, 563 (7th Cir. 1994) ("*Florin I*"), citing *Skelton v. General Motors Corp.,* 860 F.2d 250, 252 (7th Cir.1988), *cert. denied,* 493 U.S. 810, 110 S.Ct. 53, 107 L.Ed.2d 22 (1989).  The common fund doctrine "is based on the equitable notion that those who have benefited from litigation should share its costs." *Skelton*, 860 F.2d at 252.

9. With the IMI Settlement, Class Counsel have created an additional Settlement Fund in the amount of $29 million.  Distribution of the IMI Settlement Fund for the benefit of Settlement Class members is subject to the Court's approval, and the IMI Settlement does not provide for the direct payment of attorneys' fees or expenses by IMI.  Levin Dec., ¶ 11.  Instead,

4

Class Counsel and Plaintiffs may seek Court-approval for the payment of attorneys' fees and reimbursement of costs and expenses to be paid out of the Settlement Funds. *See*, IMI Settlement, ¶¶ 26-27. The IMI Settlement Fund, like the funds created under the American, Shelby and Prairie Settlements before it, is therefore a paradigm example of a "common fund" established for the benefit of a plaintiff class, and the Court finds that its creation by Class Counsel justifies application of the common fund doctrine to award attorneys' fees and reimburse expenses.

10. The Seventh Circuit has repeatedly held that the goal of a district court when awarding reasonable attorneys' fees is to estimate what the lawyers "would have received in an arms-length negotiation." *Cont'l Ill. Sec. Litig.,* 962 F.2d at 572. The court of appeals recently summarized this long-standing rule:

> In deciding fee levels in common fund cases, we have consistently directed district courts to "do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time."

*Sutton v. Bernard*, 504 F.3d 688, 692 (7th Cir. 2007), quoting *In re Synthroid Mktg. Litig.,* 264 F.3d 712, 718 (7th Cir. 2001) ("*Synthroid I*"). As stated by Judge Posner in *Cont'l Ill. Sec. Litig.,* "[I]t is not the function of judges in fee litigation to determine the equivalent of the medieval just price. It is to determine what the lawyer would receive if he were selling his services in the market rather than being paid by court order." *Cont'l Ill. Sec. Litig.,* 962 F.2d at 568.

11. Class Counsel have proposed an award of attorneys' fees using a percentage of the fund approach. Levin Dec., ¶ 10. The Seventh Circuit has expressed a preference for the percentage of the fund approach, recognizing that "there are advantages to utilizing the percentage method in common fund cases because of its relative simplicity of administration,"

5

and confirming that using a percentage approach alone is well within the discretion of the district court. *Florin I,* 34 F.3d at 566.

12. For reasons discussed below, the Court finds that the "percentage of the fund" approach favored by the Seventh Circuit is also the most accurate reflection in this case of "the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *Sutton*, 504 F.3d at 692.

13. In determining the "market price" for legal services, the Seventh Circuit has instructed district courts to "balance the competing goals of fairly compensating attorneys for their services rendered on behalf of the class and of protecting the interests of class members in the fund." *Florin I,* 34 F.3d at 565 (citation omitted). "A court must assess the riskiness of the litigation by measuring the probability of success of this type of case *at the outset* of the litigation." *Id*. (citations omitted; emphasis original). By consulting the market for legal services, in light of the attorney's risk of nonrecovery, the court may estimate the "reasonable percentage" that the parties would have agreed to as a fee at the outset of the litigation. *Sutton,* 504 F.3d at 693.

14. In *Synthroid I*, a securities fraud class action, the Seventh Circuit offered some guidelines to district courts determining a reasonable fee using the "market approach." First, the court suggested an analysis of actual agreements to determine "the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *Synthroid I,* 264 F.3d at 719-20. Second, the court suggested that district courts could consider data from securities suits where large investors have chosen to hire counsel up front. *Id*. at 720. In doing so, the court recognized that such data had become "widely available" following changes in securities law practices. *Id*. Third, the court suggested that district courts

could find guidance from the result of lead counsel "auctions" common in securities practice. *Id.* While these suggestions are, in part, unique to securities class actions, the court also stated that "[t]he market rate for legal fees depends in part on the risk of nonpayment a firm agrees to bear, in part on the quality of its performance, in part on the amount of work necessary to resolve the litigation, and in part on the stakes of the case." *Id.* at 721.

15. The Court finds that the risk of nonpayment in this case supports Class Counsel's proposed fee award. Class Counsel's ability to collect fees for their work in this case has been, from the outset, "inescapably contingent." *Florin I*, 34 F.3d at 566. Although many of the Defendants have been successfully charged criminally for their participation in a conspiracy to fix the price of ready-mixed concrete, virtually all of the Defendants – including IMI – have asserted that damages from the conspiracy are negligible or nonexistent, and many have asserted the Fifth Amendment hundreds of times to avoid testifying that there even was a conspiracy. Levin Dec., ¶ 12. Needless to say, Class Counsel's ability to recover a contingent fee in this matter was dependent on their ability to establish the elements required under the Sherman and Clayton Acts, as well as damages, in the face of aggressive opposition. Levin Dec., ¶ 13. From the time Class Counsel agreed to provide services, this risk of the litigation has been substantial. *Id.*

16. The Court finds that Class Counsel's risk of non-payment is also affected by the challenge of certifying a plaintiff class. Levin Dec., ¶ 14. The Court notes that the risks attending class certification existed at the outset of the case, and that the Defendants' efforts to defeat class certification have been lengthy, complex and expensive. *Id.* On issues related to class certification, Class Counsel have conducted numerous depositions, retained and prepared two experts, conducted numerous conferences with the Court, obtained millions of pages of

documents and data, and prepared hundreds of pages of briefing. *Id*. The Court notes that after the Plaintiff Class was certified by the Court, Defendants sought interlocutory review pursuant to Fed. R. Civ. P. 23(f) in an effort to reverse the order. According to Class Counsel, when interlocutory review was denied by the Seventh Circuit, Defendants promised to appeal the certification order after any judgment was entered. *Id*. The Court agrees that the risks associated with achieving and protecting class certification in this case have been substantial and continuing from the beginning. *Id*.

17. The Court also finds that the risk of nonpayment for Class Counsel at the time they undertook this matter was also tied to the risk of a defense verdict at trial. Levin Dec., ¶ 15. Class Counsel have faced the task of establishing a conspiracy among seven corporate Defendants, class-wide impact on direct purchasers, and measurable damages. *Id*. This risk has been substantial with respect to the Plaintiffs' claims against every Defendant, and continues with respect to the trial now scheduled against the Builder's Defendants. *Id*.

18. The Court also finds that Class Counsel's proposed attorney fee is also supported by their actual agreements with Plaintiffs to provide services. *Synthroid I,* 264 F.3d at 719-20. Class Counsel report that the retention agreement between each named Plaintiff and their initial counsel calls for the payment of attorneys' fees and the reimbursement of litigation expenses to be contingent upon a recovery in this case, and to be paid out of such recovery. Levin Dec., ¶ 16. Some of the agreements specifically contemplate a request for fees of 33 1/3% of any fund established for the Plaintiffs and class members, while other do not recite a specific percentage. *Id.* Class Counsel Irwin Levin has also submitted the opinion, based upon many years of experience and familiarity with the market for legal representation of the type provided by Class Counsel in this case, that the market rate for litigation such as this is a one-third contingency

agreement with litigation expenses to be advanced by counsel and reimbursed out of any recovery made for the plaintiff and/or class. *Id*.

19. Class Counsel Levin has also submitted the opinion, and the Court agrees, that a contingency fee agreement is the only arrangement by which most class members could pursue relief in this case. Levin Dec., ¶ 17. Because the litigation requires a substantial advancement of time and expense, the measure of recoverable damages is uncertain, and the risk of non-payment or under-payment is significant, it would be financially impossible, or irrational, for any of the named Plaintiffs to have agreed to pursue this matter on any basis other than a contingency arrangement with expenses advanced by counsel. *Id*.

20. The terms of the Plaintiffs' actual agreements are directly relevant to "approximating the terms that would have been agreed to *ex ante*." The actual terms recited by the parties at the outset of this litigation are evidence of "the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *Sutton*, 504 F.3d at 692. Further, Class Counsel's opinion, based on experience and familiarity with the market for legal services in cases like this one, is further evidence of the market rate for the type of services provided in this case. *See, e.g., Berger v. Xerox Corp. Ret. Inc. Guar. Pl.,* 2004 WL 287902,*2-3 (S.D. Ill.) (relying on class counsel's affidavit to support conclusion that market rate for services was contingent rate of 29% or higher).

21. Class Counsel have also identified data concerning awards of attorneys' fees in other, similar cases. In *Robert H. Lande & Joshua P. Davis, Benefits From Private Antitrust Enforcement: An Analysis of Forty Cases,* 42 U.S.F. L. REV. 879 (2008), the authors analyzed data from 40 private antitrust cases, including the fund recovered for victims and the amount awarded in attorneys' fees. Out of 16 cases resulting in recovery of less than $100 million, seven

cases included attorney fee awards of 33.3% of the fund, one case included an attorney fee award of 33% of the fund, and three cases included attorney fee awards of 30% of the fund. *Id*. at 911, Table 7A. Out of nine cases resulting in recovery of between $100 million and $500 million, seven cases included attorney fee awards of between 30% and 33.3%. *Id*. at 911, Table 7B. Only in cases in which recovery exceeded $500 million did attorney fee percentages consistently depart from this range. *Id*. at 912, Table 7C.

22. The Court finds that this evidence of fee awards in other price-fixing cases supports the conclusion that the attorneys' fees requested by Class Counsel are consistent with "the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *Sutton*, 504 F.3d at 692. This data also supports the conclusion that the market rate for the services provided by Class Counsel in this matter is a contingency fee in this range. *Berger,* 2004 WL 287902,*2 ("the Court finds based on the evidence presented by Class counsel, and the Court's awareness of the market, that a 29% fee … is at or below the market rate for this and similar litigation"), citing *Synthroid I*.

23. The Court also finds that Class Counsel's fee request is supported by other factors relevant to the *ex ante* market rate for a law firm's services, including "the quality of its performance," "the amount of work necessary to resolve the litigation," and "the stakes of the case," *Synthroid I,* 264 F.3d at 721. First, the Court notes that Class Counsel and their respective firms, Cohen & Malad, LLP and Susman Godfrey LLP, have well-established reputations for providing high quality, efficient and aggressive representation in complex matters. Second, from the commencement of this action it has been apparent that the amount of work necessary to resolve the litigation would be extensive, requiring a very substantial time-commitment by many attorneys and their legal assistants. Third, the stakes of the case are very high – the Plaintiffs

allege that Defendants effectuated a conspiracy to inflate the price of nearly $700 million of ready-mixed concrete.  Levin Dec., ¶ 18.

24.     The Court therefore finds, based upon the foregoing, that the "market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time" is a contingent fee in the amount of one-third (1/3) of the common fund recovered.  *Sutton,* 504 F.3d at 692.  Class Counsel's request for a fee award in the amount of $9,666,667 to be paid from the IMI Settlement Fund is therefore approved.

25.     Class Counsel have also requested that the Court approve an award of $463,887.93 from the IMI Settlement Fund to reimburse Class Counsel for litigation expenses incurred Between January 1, 2009 and February 28, 2010.  Levin Dec., ¶¶ 10, 20-23.  As with attorneys' fees, the Seventh Circuit directs district courts to take a market-based approach when considering requests for reimbursement of litigation expenses.  *Synthroid I*, 264 F.3d at 722.  Both the amount of specific expenses incurred, and "the amount of itemization and detail required," should be assessed by reference to the private market.  *Id.  See also, Cont'l Ill. Sec. Litig.,* 962 F.2d at 570 (court should allow reimbursement of expenses at market rates).

26.     In the Distribution Order, the Court granted Class Counsel's request for the reimbursement of $1,913,321.96  in expenses incurred through December 31, 2008, to be paid from the American, Shelby and Prairie Settlement Funds.  Class Counsel now report that they, along with other associated firms operating under their direct supervision, have incurred additional expenses in the combined amount of $463,887.93 (net of computer research costs)[1] in the prosecution of this matter between January 1, 2009 and February 28, 2010.   Levin Dec., ¶¶ 20-23, Ex. "A."  Class Counsel reports that their request for reimbursement is based upon categories of expenses that are customarily charged to clients in the market for legal services,

---

[1] *Montgomery v. Aetna Plywood, Inc.,* 231 F.3d 399, 409-10 (7th Cir. 2000).

and are included in rates and amounts that are customary in the market. Levin Dec., ¶ 22 and Ex. "A." Moreover, these are expenses that are normally recovered from a settlement fund net of attorneys' fees, which is the arrangement set forth in Class Counsel's agreements with the Plaintiffs. Levin Dec., ¶ 22. Reimbursement of expenses from the IMI Settlement Fund is also contemplated by the IMI Settlement. IMI Settlement, ¶¶ 26-27.

27.     The Court also notes Class Counsel's statements concerning the expenses incurred to employ experts in this case. A substantial portion of the total expenses incurred in this litigation to date have been for services provided by John Beyer, Ph.D. and other economists and specialists at Nathan Associates, Inc., as well as Gordon Rausser, Ph.D. and other economists and specialists at OnPoint Analytics, Inc. Levin Dec., ¶ 23. According to Class Counsel, these expenses have been "absolutely essential" in achieving class certification, successfully negotiating the IMI Settlement, and preparing the case to proceed to trial against Builder's Concrete & Supply, Inc. *Id*.

28.     By way of example, Class Counsel state that the Declaration of John Beyer, Ph.D. was central to the Court's decision to certify a Plaintiff Class; that Dr. Beyer and other economists and specialists at Nathan Associates provided essential services in the identification, review, understanding and analysis of electronic transaction data obtained from the Defendants; and that Nathan's work with the transaction data has been the basis of later analyses for class certification, damages, effective notice and settlement distribution. Levin Dec., ¶ 23.

29.     As a further example, Class Counsel state that although the Declaration of Gordon Rausser, Ph.D. originally submitted by the Plaintiffs in support of class certification was not considered by the Court at that time, all of the services originally provided by Dr. Rausser and other economists and specialists at OnPoint Analytics were a necessary step in preparing various

damages analyses.  Levin Dec., ¶ 23.  Class Counsel report that these analyses have included an initial damages assessment to assist counsel in settlement discussions; a full damages assessment and report and the extensive, in-person participation by Dr. Rausser during the mediation with IMI leading to the IMI Settlement; and the preparation of a damages analysis and report for trial, including extensive production of supporting data, work materials and other information and documents.  *Id*.  As Class Counsel further point out, a recitation included in the IMI Settlement Agreement states: "[O]ne consideration of the IMI Defendants in entering into this Agreement was the work performed by plaintiffs' experts, Dr. Gordon Rausser and Dr. John Beyer, after April 2008 relating to class certification and damages."  IMI Settlement, p. 2.

30.     The Court finds that Class Counsel's request for reimbursement of expenses from the IMI Settlement Fund is based upon an itemization and amounts that are consistent with market rates and practices and are further supported by the facts and circumstances of this case as set forth above.  Class Counsel's request for the reimbursement of expenses from the IMI Settlement Fund in the amount of $463,887.93 is therefore approved.

31.     Finally, Class Counsel have requested that the seven named Plaintiffs be awarded an additional $10,000 each as a class representative incentive fee from the IMI Settlement Fund.  Levin Dec., ¶ 24.  In this Circuit such fees may be awarded under appropriate circumstances:

> Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit.  In deciding whether such an award is warranted, relevant factors include the actions the plaintiff has taken to protect the interest of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation.

*Cook v. Niedart*, 142 F.3d 1004, 1016 (7th Cir. 1998) (citations omitted) (affirming $25,000 incentive award to plaintiff).

32. As Class Counsel point out, the named Plaintiffs are part of the Settlement Classes and the proposed Plaintiff Class, and could have simply awaited the outcome of the litigation and received the same benefits as any other class member. Levin Dec., ¶ 24. Instead, they committed to participate actively in what promised to be a lengthy and hard fought lawsuit against their corporate suppliers on behalf of a large group of potential class members. *Id*. Class Counsel report that the named Plaintiffs were made aware that an incentive fee is not a foregone conclusion but was a possibility, and would be left to the Court's discretion. *Id*.

33. Class Counsel report that the named Plaintiffs in this case, Kort Builders, Inc., Dan Grote, Cherokee Development, Inc., Wininger/Stolberg Group, Inc., Marmax Construction, LLC, Boyle Construction Management, Inc., and T&R Contractor, Inc., have each made substantial contributions on behalf of Settlement Class members. Levin Dec., ¶ 25. Moreover, Class Counsel correctly point out that the named Plaintiffs undertook a business risk not faced by other Class members – that litigation against the Defendants would damage their relationship with these necessary suppliers. *Id*. Indeed, many Settlement Class members will receive benefits vastly exceeding those that will be received by the named Plaintiffs, as a direct result of the efforts and contributions made by, and risks undertaken by, the named Plaintiffs. Levin Dec., ¶ 27. The Court agrees that it is not an exaggeration to say that the named Plaintiffs have performed a central role in obtaining tens of millions of dollars for Central Indiana construction businesses. *Id*.

34. Each Plaintiff, through one or more representatives, has participated in multiple in-person and telephone conferences, including extensive meetings to prepare discovery responses. Each Plaintiff, through one or more representatives, has prepared for and submitted to a deposition. Levin Dec., ¶ 26. Each Plaintiff has provided answers to interrogatories, has

14

reviewed their current and archived records, has produced documents responsive to requests, and has allowed Class Counsel's consultants to access their computer systems and servers and download data for production. *Id*. Some of the Plaintiffs have conferred by phone with the Plaintiffs' expert, and at least two have appeared before the Court and the Magistrate during proceedings. *Id.* Each Plaintiff has provided valuable assistance and demonstrated an ongoing commitment to protecting the interests of Class members. *Id*.

35. The Court agrees that an award for each of the Plaintiffs from the IMI Settlement Fund is appropriate to provide an incentive for their participation, and that the requested awards are supported by "the actions the plaintiff has taken to protect the interest of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Cook*, 142 F.3d at 1016.

36. The Court also finds that the requested incentive award of $10,000 is highly reasonable in light of awards in other cases. *See, e.g., Id. (*affirming $25,000 incentive award to plaintiff); *Lively v. Dynegy, Inc.,* 2008 WL 4657792 (S.D. Ill.) (awarding $10,000 to each of three plaintiffs); *Meyenburg v. Exxon Mobil Corp.,* 2006 WL 2191422 (S.D. Ill.) (awarding $3,000 incentive fee); *Morlan v. Universal Guar. Life Ins.,* 2003 WL 22764868 (S.D. Ill.) (awarding $25,000, $20,000, $20,000 and $5,000 respectively to class representatives); *Gaskill v. Gordon,* 942 F.Supp. 382 (N.D. Ill. 1996) (awarding $6,000 to each plaintiff); *Spicer v. Chicago Board Options Ex., Inc.,* 844 F.Supp. 1226 (N.D. Ill. 1993) (collecting cases awarding incentive fees ranging from $5,000 to $100,000; awarding $10,000 each to named plaintiffs). Class Counsel's request for a class representative incentive award to each named Plaintiff in the amount of $10,000 is therefore approved.

IT IS THEREFORE ORDERED by this Court that:

1. The Motion for Award of Attorneys' Fees, Reimbursement of Expenses, and Award of Class Representatives' Incentive Fee From IMI Settlement is hereby granted;

2. Class Counsel's request for an award of attorneys' fees in the amount of $9,666,667 is hereby granted and the Claims Administrator is authorized and directed to pay this sum to Class Counsel from the IMI Settlement Fund following the Effective Date of the IMI Settlement as defined therein;

3. Class Counsel's request for the reimbursement of litigation expenses in the amount of $463,887.93 is hereby granted and the Claims Administrator is authorized and directed to pay this sum to Class Counsel from the IMI Settlement Fund following the Effective Date of the IMI Settlement as defined therein;

4. Class Counsel's request for an award of incentive fees in the amount of $10,000 each to the named Plaintiffs is hereby granted, and the Claims Administrator is authorized and directed to issue a check in this amount from the IMI Settlement Fund to each named Plaintiff and deliver the same to Class Counsel for distribution following the Effective Date of the IMI Settlement as defined therein; and

5. The Court retains jurisdiction over the parties, the Settlement Class, the IMI Settlement Fund and the Claims Administrator for purposes of effectuating the terms of the IMI Settlement and the terms of this Order.

SO ORDERED.

Date: 03/30/2010

*Sarah Evans Barker*
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana